Dissenting Opinion by
Spaulding, J.:
Appellant James O’Malley was found guilty of robbery and assault and battery, together with an accomplice, following a jury trial in the Criminal Division of the Wyoming County Court which commenced on June 24, 1970. He was sentenced to serve a term of imprisonment of 2y2 to 5 years. No direct appeal was taken, but subsequently, appellant filed a petition under the Post Conviction Hearing Act. After a hearing, the petition was denied. This appeal followed.
Appellant contends that the trial court erred in submitting his confession to the jury without first holding a separate hearing as required by Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774 (1964). He alleges that the confession was inadmissible in that it was taken while he was intoxicated. His statement consisted of a stipulation that the account of the perpetration of the crime given to police officers by his accomplice was true and correct, and that he had voluntarily turned over to police the remaining $49.00 of the $70.00 which was his share of the loot from the robbery. The statement of the accomplice, which was read and attested to at the trial, indicated appellant to be the primary instigator of the scheme and the one who physically assaulted the victim. It further stated that at appellant’s suggestion, the $140.00 taken from the victim was divided two ways.
Aside from appellant’s own contention that he was in a drunken daze at the time of his in-custody interrogation, the record contains other characterizations of *495 appellant’s demeanor. At appellant’s guilty plea hearing, the state trooper testified as follows: “Q. What was the physical condition of the defendant at the time this questioning was going on? Was he in complete control of his mental and physical faculties or not? A. I would say half and half at the time, he had been drinking prior to the time we picked him up. Q. Would you as a police officer state that he was under the influence of alcohol to the extent where he couldn’t reason, or was he not under the influence? A. I would say that he was under the influence but at the time the questioning took place at the barracks he was more or less half and half. Q. Is there any question in your mind that he understood what was going on? A. I believe he understood what was going on, what took place there that evening.” (N.T. 17) (guilty plea hearing) Nearly two months later, at appellant’s trial, the same officer testified: “Q. Trooper Bowers, what kind of condition was Mr. O’Malley in? A. Mr. O’Malley had been drinking, to what degree I couldn’t say whether he was really drunk or not. Q. Do you think he was sober? A. He wasn’t sober. Q. You said he had been drinking, how do you know that? A. He had been drinking prior to the time he had been picked up that afternoon. By the Court: Q. Not had he been drinking but how do you know he had been drinking? A. The smell of alcohol on his breath. Q. Can you describe his manner to us, how he walked and talked? A. His walk I wouldn’t say it was normal but he was able to navigate alone all right.” (N.T. 41-42) (Trial) The record further indicates that, since appellant could not write, police officers printed out the statement for appellant to copy at the bottom of the accomplice’s written statement.
Notwithstanding these indications that there may have been a meritorious challenge on the grounds that appellant’s statement was not voluntarily and intelli *496 gently given, there was no formal objection to its admission. The Commonwealth argues that failure to object before or during the trial precludes appellant’s contention in post-conviction proceedings that he was entitled to a Jackson-Denno hearing prior to submission of the confession to the jury. See: Commonwealth v. Snyder, 427 Pa. 83, 233 A. 2d 530 (1967); Commonwealth v. Nash, 436 Pa. 519, 261 A. 2d 314 (1970).* Although the Commonwealth is correct in general, this appellant is not barred from raising his Jackson-Denno claim at this stage because (1) the trial judge was aware of the voluntariness issue, as evidenced by his instructions to the jury that they must disregard the appellant’s statement if they found that it was involuntary due to appellant’s intoxication (N.T. 75) (trial); and (2) I detect no reasonable basis for counsel’s failure to attempt to exclude the statement.
I.
The contemporaneous objection requirement has been upheld as a legitimate tool for assuring the or *497 derly administration of criminal cases. Commonwealth v. Snyder, 427 Pa. 83, 233 A. 2d 530 (1967), cert. denied, 390 U.S. 983, 88 S. Ct. 1104 (1968). In the instant case, the aims of the rule were not compromised by the failure to comply with its requirements, as the trial judge was not only aware of the voluntariness problem, but he presented it to the jury. The error lies in that the voluntariness issue was presented to the jury in precisely the fashion that the United States Supreme Court has found to be violative of due process. I would not place upon the trial court an affirmative burden to broach the voluntariness issue where it has not been presented by trial counsel: to impose such an obligation on the trial judge would usurp counsel’s role as the “manager of the lawsuit”. Snyder, supra, p. 94. However, where the court raises the issue sua sponte, it should be required to comply with the procedure promulgated in Jaehson, supra, the same as if a formal challenge had been raised by defense counsel.
II.
Only where the actions of counsel are unreasonable within the context of the situation presented to him at the time of trial will we find his performance incompetent. Commonwealth ex rel. Washington v. Moroney, 427 Pa. 599, 235 A. 2d 349 (1967). More specifically, with regard to a court’s ex post facto evaluation of counsel’s decision not to object to the admission of a statement, our Supreme Court said in Snyder, supra: “The line between a voluntary and an involuntary confession is one composed of subtle graduations . . . , compounding this difficulty is the congeries of reasons why counsel might choose not to attack the confession — a desire to make defendant appear cooperative, a hope that police testimony can be shaken on cross-examination or, perhaps, a belief that the version *498 of the crime offered in the confession can be used to defendant’s advantage.”
Notwithstanding these authorities which indicate the long-standing judicial policy of restraint when examining claims of incompetency, I conclude in this instance that, insofar as the failure to object to the admission of his statement to police officers, appellant was denied effective counsel.
Granted that the body of law on the admissibility of confessions taken while a defendant is in a state of self-induced intoxication does not lend readily to a facile determination of whether any set of circumstances rendered a confession inadmissible. This is no doubt due to the inability to extract a easily applicable standard from the myriad eases in the area, ranging from the situation where the defendant’s appearance and demeanor manifested blurred eyes, thickening of speech, and the odor of alcohol, but no substantial inability to communicate intelligently, US. v. Kershner, 432 F. 2d 1066 (5th Cir. 1970), to the situation where the defendant was experiencing withdrawal and its accompanying symptoms of nausea, incoherency and anxiety, Commonwealth v. Holton, 432 Pa. 11, 247 A. 228 (1968). Nonetheless, even absent a precedent road-map, the implications of involuntariness were substantial enough to warrant an attempt to exclude this appellant’s statement unless there were strategic or tactical reasons for failing to do so.
No tactical benefit which could have been reasonably expected to outweigh the prejudicial impact of appellant’s statement may be discerned. The statement could neither be deemed exculpatory nor supportive of appellant’s defense. Appellant based his defense on the assertion that he was too intoxicated at the time of the alleged assault and robbery to have been able to perform any of the actions attributed to him. By compari *499 son, the accomplice’s version, which appellant ratified by his custodial statement, made appellant the initiator and the primary perpetrator of the crime. It can hardly be argued that appellant could reap any benefit from adding to the credibility of his accomplice’s statement. Moreover, even if counsel’s failure to object could be interpreted as an attempt to demonstrate appellant’s cooperativeness or to place the Commonwealth’s witnesses in a bad light, within the factual context of this case, any benefit which could have been gained from these strategies seems far outweighed by the risk of prejudice to the defendant.
The court below contends that even if the trial court should have had a Jackson-Denno hearing, the evidence against the appellant was so overwhelming as to render the failure to have a separate hearing harmless error. I disagree.
I am hard-pressed to conclude beyond a reasonable doubt that appellant’s confession did not contribute to the verdict against him. See Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967). It may be that the evidence was sufficient to support a guilty verdict even absent appellant’s statement. However, whether or not the inadmissible evidence was the pivotal factor in justifying a conviction is not the Chapman standard; rather, the test is whether the evidence influenced the jury’s decision. Here, the evidence against appellant, aside from his own statement, was the statement of an accomplice, who, while implicating the appellant, attempted to mitigate his own accountability. There was also the testimony of the wife of the accomplice, who obviously had an interest in corroborating her husband’s version. The testimony of the victim, identifying the appellant as one of the two men who robbed and assaulted him, contradicted in part his prior statement that only appellant’s accomplice had hit him. M *500 nally, there was the testimony of the police investigator that appellant told him he hit the victim. Given the caution with which the testimony of the accomplice must be viewed, see Commonwealth v. Ross, 434 Pa. 167, 252 A. 2d 661 (1969), p. 170; Commonwealth v. Mulroy, 154 Pa. Superior Ct. 410, 36 A. 2d 337 (1944), the possible interest of the wife, and the contradictions in the testimony of the victim, there appears to be more than a reasonable doubt that appellant’s statement influenced the jury against him. See Fahy v. Connecticut, 375 U.S. 85, 84 S. Ct. 229 (1963); Gladden v. Unsworth, 396 P. 2d 373 (9th Cir. 1968).
I would vacate the order of the court below and remand the case for a Jackson-Denno hearing. See Commonwealth ex rel. Alexander v. Maroney, 426 Pa. 186, 188, 231 A. 2d 746 (1967).
Hoppman and Packel, JJ., join in this dissenting opinion.

 Appellant cites Commonwealth em rel. Alexander v. Maroney, 426 Pa. 186, 231 A. 2d 746 (1967), for the proposition that where there is evidence in the record that the voluntariness of the confession is being challenged, no formal objection is necessary in order to preserve appellant’s Jackson-Denno claim on collateral attack of the conviction. As I have not found any case which was tried after the Jackson-Denno decision where actions short of a formal objection to the admission of a confession were found sufficient under our contemporaneous objection requirement, I conclude that the Alexander holding was designed to give meaningful effect to the retroactive application of Jackson v. Denno. See Commonwealth v. Snyder, 427 Pa. 83, 233 A. 2d 630 (1967) footnote 2. Prior to the Jackson-Denno holding, an attorney could not have been reasonably expected to raise a formal objection to the failure to hold a separate hearing on voluntariness; however, six years alter the holding, we would not expect competent counsel to do otherwise, absent strategic reasons.