417 A.2d 611

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Frederick BURTON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 21, 1980.

Decided July 3, 1980.

Paul R. Gettleman, Zelienople, for appellant.

Robert B. Lawler, Chief, Appeals Division, Neil Kitrosser, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

On May 31, 1973, the warden and deputy warden of Holmesburg Prison in Philadelphia were slain within the confines of the prison. Appellant, Frederick Burton, and another inmate, Joseph Bowen, were charged with the murders. On June 8, 1976, a jury found Burton guilty of one count of murder of the second degree. Post-verdict motions were filed and denied after a hearing. Burton was then sentenced to a term of life imprisonment.

In this appeal, Burton complains of several alleged instances of ineffective assistance of trial counsel.[1] However, we find each of these claims to be without merit.

1. Burton's original counsel represented him throughout trial and post-trial proceedings and submitted a brief to this Court after filing Burton's appeal. Original counsel died prior to the time this case was listed for argument and was replaced by present counsel who submitted a second brief on Burton's behalf. Original counsel's brief contains eight assignments of error, all of which are distinct from the errors asserted in the brief submitted by present counsel.

However, we find the issues presented in original counsel's brief waived and, thus, will not consider them. Burton's written post-verdict motions, filed after our decision in *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), were of the "boiler plate" variety and did not include the issues presented in original counsel's appellate brief. *Commonwealth v. Blair*, supra. Although some of these issues were considered by the court presiding over Burton's post-verdict motions, there is no assertion or indication of record that these issues were raised in a brief presented to that court. Compare *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979); *Commonwealth v. Perillo*, 474 Pa. 63, 376 A.2d 635 (1977); *Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977).

The issues raised in present counsel's brief all involve allegations of ineffective assistance of original counsel. Since this is new counsel's first opportunity to present those issues, they are properly

■ Where, as here, counsel is claimed to be ineffective for not properly preserving issues in the trial court for appellate review, in evaluating the effectiveness of counsel this Court utilizes a two-step analysis. First, we must determine whether the issue underlying the charge of ineffectiveness is of arguable merit.[2] If the underlying issue is found to be of arguable merit,[3] our inquiry shifts to a determination of whether the course chosen by counsel had some reasonable basis designed to effectuate his client's interest. *Commonwealth v. Evans,* supra; *Commonwealth v. Sherard,* supra; *Commonwealth v. Hubbard,* supra.

■ Presently, Burton contends his trial counsel was ineffective for failing to object to the Commonwealth's impeachment of defense witness Joseph Bowen by questions concerning prior arrests which had not resulted in convictions and questions concerning prior convictions involving non crimen falsi crimes. At trial, the Commonwealth cross-examined Bowen[4] with regard to a prior shooting of an elderly couple for which he had been arrested but not convicted[5] and his prior convictions for assault with intent to kill and

before us. *Commonwealth v. Hubbard,* 472 Pa. 259, 276–277, n. 6 & 7, 372 A.2d 687, 695, n. 6 & 7 (citing cases).

2. The underlying issue is considered solely for the purpose of resolving the question of ineffective representation. See *Commonwealth v. Evans,* 489 Pa. 85, 91, n. 5, 413 A.2d 1025, 1028, n. 5 (1980); *Commonwealth v. Sherard,* 483 Pa. 183, 191, n. 5, 394 A.2d 971, 976, n. 5 (1978); *Commonwealth v. Hubbard,* supra, 472 Pa. at 278, 372 A.2d at 696 (1977).

3. Counsel cannot be found ineffective for failing to assert a meritless claim. *Commonwealth v. Hubbard,* supra.

4. On direct examination, Bowen had testified that he alone had committed the murders for which Burton was on trial and that Burton had been an innocent bystander. The fact that Bowen had already been convicted of these murders was also brought out on direct examination.

5. Charges stemming from this incident were nol-prossed.

murder of a police officer. These questions were received and answered without objection by defense counsel.[6]

█ In Pennsylvania, a witness may now be impeached by showing a prior conviction only if the crime involved dishonesty or false statement. *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978); *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973). Accord *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). Assault with intent to kill and murder are not such crimes. Furthermore, prior criminal acts not resulting in a conviction are not admissible to impeach a witness' credibility. *Commonwealth v. Katchmer*, supra; *Commonwealth v. Ross*, 434 Pa. 167, 252 A.2d 661 (1969). Thus, Burton's claim that the Commonwealth's questions were objectionable is of arguable merit.

█ However, turning to the second part of the test for effectiveness of counsel, we find that a reasonable basis for not objecting to the questions complained of clearly existed and that counsel's assistance cannot, thus, be considered ineffective.[7]

**6.** The direct, cross, and re-direct examination of Joseph Bowen occurred on Saturday, June 5, 1976, at the conclusion of that day's proceedings. In chambers on Monday, June 7, 1976, prior to the resumption of the trial, defense counsel did inform the court of his objection to the questioning of Bowen concerning his alleged shooting of the elderly couple, because he had not been convicted of that offense, and concerning his shooting a police officer, because his conviction on that charge was being appealed. However, at that point, counsel's objection was untimely and insufficient to preserve the issues for appellate review. Cf. *Commonwealth v. Bolden*, 486 Pa. 383, 406 A.2d 333 (1979); *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978); Pa.R.Crim.P. 1118(b).

**7.** As this Court has repeatedly stated:
"our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interest. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." [Emphasis in original.]

20

Burton's defense at trial was based on the contention that Joseph Bowen had committed the murders alone while Burton was merely an innocent bystander. As we have already noted, on direct examination, Bowen testified to this scenario and to having already been convicted of the murders. In this context, it would be a legitimate trial strategy for defense counsel to allow the Commonwealth to emphasize Bowen's capacity for violence and depict him as a killer. The transcript of defense counsel's closing argument indicates that such a strategy was, indeed, relied on. Obviously, the Commonwealth's showing that Bowen had previously been convicted of assault with intent to kill and the murder of a police officer and had also been arrested for shooting an elderly couple would further that strategy.[8]

■ Furthermore, a finding of ineffectiveness can never be made unless it is demonstrated that the alternatives not chosen offered a potential for success substantially greater than the course actually followed. See *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978); *Commonwealth v. Turner*, 469 Pa. 319, 365 A.2d 847 (1976); *Commonwealth ex rel. Washington v. Maroney*, supra. Although the questions Burton complains of were objectionable, in light of defense counsel's having brought out Bowen's conviction for the instant murders and his attempt to depict Bowen as a "killer", about which acts Burton does not complain, we cannot conclude timely objection to those questions offered a substantially greater potential for success than the course actually followed.

*Commonwealth v. Sherard*, supra, 483 Pa. at 190–191, 394 A.2d at 975; *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967).

**8.** The fact that defense counsel objected to the Commonwealth's questions concerning the shooting of the elderly couple and the shooting of the policeman on the Monday following the Saturday when the questioning had taken place does not alter our analysis. Counsel's assistance is not rendered ineffective merely because he hedged on or acted in some way inconsistent with a legitimate trial strategy which the record indicates he utilized.

██ Burton also claims he was denied effective assistance of counsel because trial counsel was inebriated during the course of the trial. In support of this assertion, Burton points to an exchange between the presiding judge and his trial counsel during which the judge stated that he detected a strong odor of alcohol on Burton's counsel's breath and asked him if he had been drinking; counsel replied he had consumed intoxicants every morning for the last forty years; the judge then requested that counsel sufficiently limit his drinking during the trial so that the court would not be offended by his breath.

While we certainly cannot condone consumption of alcohol by counsel immediately before or during a trial, there is no indication that Burton's counsel's drinking rendered his assistance ineffective. The exchange Burton points to occurred at side bar [9] after defense counsel insisted that a question, which had been ruled objectionable before it was completed, be fully entered on the record. After the exchange concerning counsel's drinking, counsel was ordered to proceed; the question was placed on the record; and, trial resumed. The trial judge's remarks do not indicate he believed Burton's counsel was inebriated and/or incapable of effectively representing Burton. In fact, his allowing the trial to resume points to an opposite conclusion. Further, no similar incident occurred either prior or subsequent to the exchange, and the record does not show any noticeable difference between counsel's conduct at the time of the exchange and his conduct throughout the rest of the trial. Lastly, other than implying that his counsel's drinking resulted in counsel's failure to object to the questioning of defense witness Bowen about his prior arrests and convictions, an allegation of ineffectiveness we have already disposed of, Burton does not assert any instance in which counsel's drinking resulted in ineffective assistance.

In his final assignment of error, Burton complains that trial counsel was ineffective for failing to raise allegedly

9. Since the exchange occurred at side bar, Burton could not and does not claim he was prejudiced by the jury's hearing the remarks.

inflammatory closing remarks of the prosecuting attorney as reversible error in post-verdict motions. Burton's contention refers to the following segments of closing argument:

"And, Ladies and Gentlemen, this case occurred at Holmesburg Prison. It involved an attack [on] and killing of symbols of authority; the warden and deputy warden and the captain. This is a most serious attack on our very system and it is of the utmost importance that each and every one of you realize your duty in this case and discharge them very fairly and firmly so that justice may in fact be done.

"Mr. Moore [defense counsel] spoke of bringing Mr. Burton into the light. Bring him into the light. What about [Deputy Warden] Fromhold? What about [Warden] Curran? They will never be able to be brought into the light in this world.[10]"

Applying the test for ineffectiveness of counsel to each of these remarks, we find that they do not support a claim of ineffective assistance.

Even where the language of the prosecuting attorney is intemperate, uncalled for and improper, a new trial is not required unless "its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975) (citing cases). See also *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 *cert. denied*, 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979). Furthermore, the effect of such remarks depends upon the atmosphere of the trial. *Commonwealth v. Stoltzfus*, supra. See also *Commonwealth v. Dickerson*, 406 Pa. 102, 110, 176 A.2d 421, 425 (1962). The assistant district attorney's first remark pertaining to the murders being "an attack at our very system" was, to some extent, improper as an irrelevant consideration and should have been avoided. However, it was not such as would

10. Defense counsel objected to these remarks, and his objection was overruled by the trial court.

prejudice the jury, prevent them from rendering a true verdict, and require a new trial, particularly since it was tempered by the prosecutor's exhortation that the jury realize and discharge its duty "very fairly and firmly so that justice may be done." Cf. *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Hamilton*, 460 Pa. 686, 334 A.2d 588 (1975).

█ Turning to the second remark complained of, the statement that the murder victims "will never be able to be brought out into the light in this world" is closer to the borderline of permissible argument. However, while this remark should also have been avoided, it would not require a new trial. The remark did not go beyond pointing out the obvious fact that the victims were dead and did not raise facts or considerations outside the evidence developed at trial. Neither did it convey a personal assertion of belief in Burton's guilt. See *Commonwealth v. Van Cliff*, supra. Moreover, it is clear from the context of the remark that the prosecuting attorney was attempting to meet defense counsel's impassioned appeal to the jury "to take him [Burton] out of the dark shadows of that suppression and out of pressure, oppression, and cruelty, and mistreatment, and bodily injury, and bodily harm and let him walk into the premium sunlight of freedom." See *Commonwealth v. Van Cliff*, supra; *Commonwealth v. Stoltzfus*, supra; *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590, *cert. denied*, 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973). See also, *Commonwealth v. Perkins*, supra; *Commonwealth v. Dickerson*, supra; *Commonwealth v. Tauza*, 300 Pa. 375, 150 A. 649 (1930). Therefore, this statement would not have the "unavoidable effect" of prejudicing the jury, "forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." Cf. *Commonwealth v. Van Cliff*, supra. Compare *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978) (where prosecutor made remarks indirectly conveying his personal belief concerning critical issues and placed unnecessary emphasis on involvement of drugs, the remarks

"exceeded that which was necessary to effective rebuttal" and were "of such a nature as to deprive the appellant of a fair trial.")

▮▮ Since the remarks presently complained of were not such as would require a new trial, Burton's trial counsel cannot be considered ineffective for failing to raise this claim of error in post-verdict motions. Accord, *Commonwealth v. Hubbard*, supra.

Judgment of sentence affirmed.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

Appellant has been convicted of murder of the second degree and stands subject to a judgment of sentence of life imprisonment. Appellant claims, and the record establishes, that appellant's counsel at his jury trial noticeably demonstrated signs of alcohol consumption. Nevertheless, a majority of this Court now affirms the judgment of sentence of life imprisonment received as a result of this representation. The Court thus, with a single stroke, fails to accord appellant his basic constitutional right to counsel and renigs on its obligation to protect the dignity and integrity of our courts of criminal justice. I cannot join in this action.

The United States Constitution, Amends. VI & XIV, and our Pennsylvania Constitution, Art. I, § 9, both guarantee to the criminally accused the right to the assistance of counsel. These provisions envision that counsel "shall have the opportunity [to] and in fact discharge the responsibilities required by his representation." *Commonwealth v. Fiero*, 462 Pa. 409, 413, 341 A.2d 448, 450 (1975). In any case where defense counsel so exhibits signs of drinking as to prompt an on the record rebuke by the trial judge, these constitutional guarantees plainly have not been fulfilled. The trial court's displeasure with defense counsel is evident and, if the smell of alcohol was sufficiently powerful to prompt the court's notice and disapproval, it is not unreasonable to believe that it was perceptible to some or all of the jurors. Aside from

the obvious danger that appellant's right to zealous representation has been compromised, the potential for prejudice in such a circumstance is substantial. In my view, every citizen is entitled to representation free from such unnecessary dangers. Surely the trial court erred in permitting trial to continue in such circumstances. Accordingly I would now allow appellant the opportunity to be retried under less prejudicial conditions and in a manner more in keeping with the solemn demands of our system of criminal justice.

In addition, the closing remarks of the district attorney, as set forth in the majority opinion, were clearly improper and prejudicial. The prosecutor's description of the present crime as "an attack on our very system," was plainly designed to lead the jury to ignore the specific question of guilt or innocence in pursuit of some broader social judgment, and the prosecutor's lament that the victims of the crime would "never be able to be brought into the light of this world," is precisely the type of appeal to passion and unreason which this Court has always held impermissible. Cf. *Commonwealth v. Black*, 480 Pa. 394, 390 A.2d 750 (1978). On this ground as well appellant is entitled to a new trial.